IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
CIVIL ACTION NO. 4:18-CV-8

MONAT GLOBAL CORP,

    Plaintiff,

v.

VICKIE HARRINGTON,

    Defendant.

**COMPLAINT**

Monat Global Corp, by its undersigned counsel, complains against Defendant Vickie Harrington as follows:

**Parties to this Action**

1. Monat Global Corp ("Monat") is a Florida corporation, with its principal place of business in Doral, Florida.

2. Vickie Harrington ("Harrington") is, upon information and belief, a citizen of Winterville, North Carolina.

**Jurisdiction and Venue**

3. This Court has subject matter jurisdiction over Monat's claims under 28 U.S.C. § 1332 because Monat and Harrington are citizens of different states, and the amount in controversy exceeds $75,000.

4. Venue is proper in the Eastern District of North Carolina because Harrington resides here, and on information and belief, made the defamatory statements, and carried out the unfair and deceptive acts at issue, in this district.

## Background

5. Monat is a world-class designer, manufacturer, and distributor of hair care and personal products throughout the United States and Canada.

6. Monat sells its products using a direct sales model, under which it engages a number of independent sales representatives, referred to as "Market Partners," to market and distribute its products.

7. Monat provides commissions and other financial incentives to its Market Partners for sales they make, and for purchases and sales made by new and additional Market Partners that they recruit.

8. Monat's Market Partners utilize Facebook and other social media as the primary avenue of marketing Monat's products.

9. In approximately September 2017, Harrington executed a contract with Monat to become a Market Partner.

10. On information and belief, Harrington used or sold the initial product shipments she received, representing approximately $900 in value.

11. Within approximately three months of becoming a Market Partner, Harrington demanded a full refund of all products she had purchased from Monat.

12. Monat initially rejected Harrington's demand for a refund because it was beyond Monat's 30-day money-back guarantee window.

13. In response, Harrington took to Facebook to relentlessly disparage Monat's products, and falsely represented that they cause balding, hair loss, and scalp damage.

14. On December 26, 2017, Harrington falsely represented on Facebook that Monat's products cause scalp burns, strip color from hair, and "thin" and break hair. Harrington also

represented that Monat products "contain a highly dangerous extract called red clover that is horrible for cancer patients, pregnant, and breast feeding woman [sic]." *See* December 26, 2017 Facebook post, attached as **Exhibit A**.

15. In late December 2017, Harrington commented on Facebook to another individual, "if you know anybody using these products, please warn them." She added that the "hair loss, scalp sores, irritation, burning, etc [sic] that DOES NOT STOP once you stop using these products." *See* late December 2017 Facebook post, attached as **Exhibit B** (identified individuals other than Defendant redacted).

16. On December 24, 2017, Harrington posted on Facebook an altered photograph of Leonardo da Vinci's Mona Lisa portrait, with the subject's hair removed so she appeared bald, which Harrington titled "Monat Lisa." Her comment corresponding to the picture read, "Trust me people! #MONAThairCARE." *See* December 24, 2017 Facebook post, attached as **Exhibit C** (identified individuals other than Defendant redacted).

17. In late December 2017, with no scientific or factual basis, Harrington again commented on Facebook that the red clover ingredient in Monat's products "is causing all kinds of major problems. Really bad in cancer patients." *See* late December 2017 Facebook comment, attached as **Exhibit D**.

18. In mid-December 2017, Harrington created a Facebook Group named "Monat - My Modern Nightmare" (the "Group" or "Facebook Group").

19. On or before December 16, 2017, Harrington created a post addressing the Group, which stated, "Happy Friday My Fellow Monat Haters!!" She continued:

> I received some very interesting emails and we have definitely gotten some attention from the Florida Attorney General, The FTC, the Miami Dade county Consumer Protection Office as well as the BBB. So if you haven't filed a complaint and have issues with Monat, I urge you to get

> those complaints in ASAP!! If you were not affected by Monat but your friends or clients were, please have them file complaints. . . .

*See* December 16, 2017 Facebook post, attached as **Exhibit E** (identified individuals other than Defendant redacted).

20. Harrington's statement on or about December 16, 2017, by itself and in context with her other statements, falsely implies and suggests that Monat has engaged in unlawful conduct, which has "gotten some attention," from various authorities that handle criminal and civil misconduct.

21. During discussions in the Group about flooding the Better Business Bureau and certain government agencies with complaints against Monat, one individual asked Harrington, "[w]hat if I haven't had a problem, can I still make a complaint about the company?" Harrington answered affirmatively, that yes, the individual "can still complain." *See* Harrington comment to Group member, attached as **Exhibit F** (identified individuals other than Defendant redacted).

22. On January 2, 2018, Harrington again created a Facebook post where she falsely represented that Monat products cause balding, and falsely suggested Monat engaged in criminal activity. She wrote:

> #monatstrikesagain And the harassment continues! As you know, I've been stalked, threatened and harrassed [sic] on FB because some people can't handle the truth about Monat. I have ove [sic] 2,000 people that say the truth is your hair will fall out and worse!!! Well today, they crossed the line. Somebody left a sample of shampoo in my mailbox with no contact information. Other neighbors haven't received any. So now these people have taken it to a whole new level!!! They stalked me to find out where I live and then mess with my mailbox which is a federal offense. I have contacted the police this time and I have a few idsea [sic] of who did this and I'm sure the officer will be paying them a visit. . . . These people are crazy! And they want the truth silenced by playing childish games. Bring it!!! #monathaircare #monat #monatlies #monatsucks #monatharassment #monatstories

*See* January 2, 2018 Facebook post, attached as **Exhibit G**.

23. On January 10, 2018, Harrington created a Facebook post stating that "reporters in Oklahoma and LA want to do a story" on her "Monat Nightmare!!!!" She stated, "[e]verybody get your hands ready to wave bye bye to Monat!!" *See* January 10, 2018 Facebook post, attached as **Exhibit H**.

24. The next day, on January 11, 2018, Harrington again stated, "[h]ey Monat ….. filming begins in 2 weeks!!!! #monat, #monathaircare #hairloss #monatnightmare." *See* January 11, 2018 Facebook post, attached as **Exhibit I**.

25. On January 16, 2018, Harrington posted five photographs on Facebook of magnified images purporting to show a scalp with graphic sores and abrasions ("January 16 Post"). *See* January 16 Post, attached as **Exhibit J**.

26. In her January 16 Post, Harrington stated "[s]till want to try Monat? First pic is a healthy scalp under a scalp scope. Other pictures are a friend's scalp AFTER Monat under same scalp scope. Let these images sink in for a minute. #monat #monathaircare #healthyscalp #monathairloss." *Id.*

27. Individually and collectively, Harrington's Facebook posts explicitly or impliedly represent that Monat's products cause scalp sores and abrasions, hair loss, balding, and are dangerous for pregnant women, or individuals receiving cancer therapy.

28. Harrington's Facebook posts and comments have been adopted and republished by a number of individuals, many of whom, on information and belief, have a financial interest in disparaging Monat's products.

29. On information and belief, Harrington has made other defamatory statements, and her actions indicate she is likely to continue to make additional statements of a similar nature in the future.

30. There is no scientific or factual basis for Harrington's claims.

31. Monat's products have passed all clinical safety tests to which they have been subjected.

32. The ingredients in all of Monat's products have been approved as safe for consumer use by the United States Food and Drug Administration and the European Union in the quantities that Monat uses them.

33. Monat takes seriously the consumer complaints it receives, and investigates each complaint to the fullest extent permitted by the consumer.

34. Despite selling hundreds of millions of dollars in hair care and personal products, to hundreds of thousands of customers, Monat has seen no bona fide evidence that Monat's products cause scalp burns, sores, irritation, hair loss, or balding, as Harrington claims.

35. Although Harrington is one individual, she has used her social media account as a platform to falsely and maliciously disparage Monat and its products, and to attempt to gravely injure the business.

36. Harrington has published her posts, comments, and statements directly to, on information and belief, hundreds of people.

37. Thousands more have likely viewed Harrington's posts by virtue of Facebook's "share" feature, which allows any user to publish to their entire Facebook network another user's post.

38. Harrington's posts have been "shared" on numerous occasions.

39. In addition, Harrington's Facebook page is publicly accessible, so her posts can be accessed by individuals who are merely surfing Facebook or Google.

40. Harrington's Facebook posts are particularly damaging to Monat because Facebook is the primary avenue through which Monat Market Partners promote their products.

41. Through those efforts, Monat generated over $200 million in sales in 2017.

42. Harrington's false and malicious statements have caused, and continue to cause, Monat to lose product sales. Her statements have improperly, and without justification, dissuaded potential customers from using Monat's products, and have caused existing customers to stop using Monat's products.

43. Harrington's false and malicious statements have damaged, and continue to damage, Monat's ability to attract new Market Partners.

44. Harrington's false and malicious statements have damaged, and continue to damage, Monat's relationships with its current Market Partners and their ability to market and sell Monat's products.

**Count I: Commercial Disparagement/Trade Libel/Injurious Falsehood**

45. Monat incorporates paragraphs 1 through 44 as if fully set forth herein.

46. On her public Facebook page, Harrington published falsehoods about the quality, condition, and value of Monat's products, on information and belief, to hundreds or even thousands of individuals.

47. Harrington made her statements with knowledge of their falsity, or while being reckless with regard to their falsity, and without any privilege to do so.

48. Harrington intentionally made false statements to cause damage to Monat's business and product sales.

49. Harrington's statements damaged Monat's sales, the value of its products, and Monat's relationship with its Market Partners, in excess of $75,000.

50. Harrington made her statements with willful and malicious intent, as demonstrated by the fact that she has encouraged individuals to complain to the authorities even if they "haven't had a problem" with Monat's products, and based on the contempt and frequency with which Harrington posted negative comments.

**Count II: North Carolina Unfair Trade Practices Act
N.C.G.S. § 75-1.1**

51. Monat incorporates paragraphs 1 through 50, and paragraphs 59 through 68, as if fully set forth herein.

52. Harrington is a former Monat Market Partner.

53. Unsatisfied with her attempt to start her own business, Harrington has engaged in unfair or deceptive acts or practices affecting commerce by making false statements about Monat and its products.

54. Harrington's statements are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers. These actions were intentionally taken to affect commerce, given their stated and implied intent to cause economic harm to Monat.

55. Harrington's Facebook posts had the tendency to deceive or mislead consumers, and have in fact deceived and misled consumers by telling them that Monat's products are detrimental to their health and well-being, when no such danger exists.

56. Harrington's statements have proximately caused injury to Monat, as they have prevented consumers from purchasing Monat's products, and have deterred Market Partners from working with Monat.

57. Harrington's deceptive and unfair business practices have damaged Monat's sales, its business relationships with Market Partners, and its ability to recruit prospective Market Partners, in excess of $75,000.

58. Harrington's statements and conduct demonstrate a clear design to gravely injure Monat's business and reputation, including her willingness to fabricate claims and allegations to advance her aims and her willingness to encourage others to join her campaign against Monat even if they, admittedly, "haven't had a problem" with Monat or its products.

### Count III: Defamation/Libel

59. Monat incorporates paragraphs 1 through 44 as if fully set forth herein.

60. On her public Facebook page, Harrington published falsehoods about Monat and its products, on information and belief, to hundreds or even thousands of individuals.

61. Harrington's statements were intended to, and did, impeach the trade or profession in which Monat engages. Moreover, Harrington's intent was to subject Monat to ridicule, contempt, or disgrace.

62. Harrington's statements constitute libel *per se* because she falsely accused Monat of engaging in illegal activity, and other improprieties, in the conduct of Monat's business.

63. Harrington's statements are not capable of multiple interpretations. Each was directed to Monat and its products, and were intended to cause damage to each.

64. Harrington knew her statements were false, or she was reckless with regard to the truth or falsity of her statements.

65. To the extent any of Harrington's above statements do not constitute libel *per se*, those statements alternatively constitute libel *per quod*.

66. In context, a reasonable person viewing Harrington's statements as a whole, or individually, would understand that she represented that Monat's products cause scalp irritation, balding, hair loss, and other health related issues.

67. As a result of Harrington's statements, Monat has suffered damage to its sales, its corporate reputation, and its relationships with its current and prospective customers and independent sales representatives, in excess of $75,000.

68. Harrington made her statements with willful and malicious intent, as demonstrated by the fact that she has encouraged individuals to complain to the authorities even if they "haven't had a problem" with Monat's products, and based on the contempt and frequency with which Harrington posted negative comments.

**Count IV: Tortious Interference with Prospective Economic Advantage**

69. Monat incorporates paragraphs 1 through 44 as if fully set forth herein.

70. Monat has had a network of Market Partners since August 2014.

71. Monat's existing Market Partners are continually attempting to recruit new Market Partners to sell Monat's products.

72. Harrington is aware of Monat's prospective relationships with potential Market Partners because she was once a Market Partner and is familiar with Monat's business model.

73. Harrington actively spreads falsehoods about Monat and its products to discourage existing and prospective Market Partners, and customers, from associating with Monat and purchasing its products.

74. Harrington took these actions without any justification, and did so to fuel her anger or resentment towards Monat.

75. Harrington intentionally made false statements about Monat and its products to unjustifiably interfere with Monat's existing and prospective relationships with its Market Partners and customers, and to induce those persons to not do business with Monat.

76. Harrington's intentional and unjustified interference and false statements have caused existing and prospective Market Partners to choose not to do business with Monat.

77. Harrington's intentional and unjustified interference has caused customers to decide to forego purchasing products from Monat, and those economic transactions would have occurred but for Harrington's interference.

78. Harrington made her statements with willful and malicious intent, as demonstrated by the fact that she has encouraged individuals to complain to the authorities even if they "haven't had a problem" with Monat's products, and based on the contempt and frequency with which Harrington posted her negative comments.

WHEREFORE, Monat Global Corp requests the following relief against Defendant Vickie Harrington:

a) permanent injunctive relief requiring Harrington to remove from her Facebook account, and any social media or other Internet-based accounts under her name or under her control, all false statements concerning Monat's products or alleged injuries caused by them;

b) permanent injunctive relief barring Harrington from publishing further false statements concerning Monat, its products, or alleged injuries caused by them;

c) permanent injunctive relief preventing Harrington from publishing further unfair and deceptive statements concerning Monat, its products, or alleged injuries caused by them;

d) an order requiring Harrington to release public statements in appropriate forums to ameliorate the negative effects and consumer confusion caused by false statements concerning Monat's products and alleged injuries caused by them;

e) compensatory damages based on injury Harrington caused to Monat's sales, reputation, the value of its products, foregone opportunities with prospective Market Partners and customers, and its business interests;

f) actual damages resulting from Harrington's unfair and deceptive practices;

g) treble damages, in excess of $225,000, pursuant to N.C. Gen. Stat. § 75-16;

h) punitive damages for Harrington's maliciously false statements;

i) reasonable attorneys' fees incurred to bring and prosecute this action pursuant to N.C. Gen. Stat. § 75-16.1;

j) any other just and proper relief that the Court finds appropriate.

Respectfully submitted this the 29th day of January 2018.

/s/ Bradley M. Risinger
Bradley M. Risinger
N.C. State Bar No. 23629
brad.risinger@smithmoorelaw.com

SMITH MOORE LEATHERWOOD LLP
434 Fayetteville Street, Suite 2800 (27601)
Post Office Box 27525
Raleigh, North Carolina  27611
Telephone:  (919) 755-8700
Facsimile:   (919) 755-8800

*Attorneys for the Plaintiff*

OF COUNSEL:

William C. Meyers
Joseph L. Hoolihan
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois  60603
Telephone:  (312) 201-4000